**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**


No. 01-30922




JULIO C. ARANA,

                    Plaintiff - Appellee


VERSUS


OCHSNER HEALTH PLAN, INC.,

                    Defendant - Appellant




Appeal from the United States District Court
For the Eastern District of Louisiana
August 15, 2002




Before KING, Chief Judge, PARKER, Circuit Judge, and ELLISON,*

District Judge.


ELLISON, District Judge:

Defendant-Appellant Ochsner Health Plan, Inc. ("OHP") requested and received certification under 28 U.S.C. § 1292(b) to appeal the district court's order denying its motion to dismiss or, alternatively, motion for summary judgment, and granting partial summary judgment to Plaintiff-Appellee Julio C. Arana ("Arana"). We hold that the district court erred to the extent that it determined it had jurisdiction over the instant action, and we reverse the district court's order on that basis and direct that the case be remanded to state court. Because we find that subject matter jurisdiction is lacking, we do not reach the substantive issues raised on appeal.

## I.  FACTS AND PROCEEDINGS BELOW

On July 5, 1998, Arana sustained serious injuries when a 1996 Ford Crown Victoria struck the rear of a 1995 Nissan Pathfinder, operated by Arana and owned by his mother, Odette LeCler. At the time of the accident, and at all relevant times thereafter, Arana was a dependent beneficiary under the employee welfare benefit plan established by his mother's employer, LeCler Printing Company.[1] OHP provided health benefits to participants and beneficiaries of the LeCler Printing employee benefit plan ("the LeCler Plan") pursuant to a Group Health Services Agreement ("GHSA") between OHP and the employer. After the automobile accident, Arana's health care providers submitted to OHP claims for services rendered to Arana, and OHP has paid approximately $180,000 in health benefits for treatment of Arana's accident-related injuries.

In addition to the health benefits paid by OHP, coverage for the accident also was available under four automobile insurance policies: a State Farm liability policy covering the Crown Victoria, an Allstate liability policy carried by the non-owner operator of that vehicle, a Fireman's Fund uninsured motorist insurance policy issued on the Pathfinder, and an excess uninsured motorist policy underwritten by United Fire. In October, 1998, State Farm and Allstate paid their respective policy limits to Arana, in the total amount of $150,000. Fireman's Fund paid Arana $487,500, on a policy with a $500,000 limit. Finally, in late 2000, United Fire, which provided $2 million in excess uninsured motorist coverage subject to $650,000 in underlying limits, settled with Arana for $475,000. Prior to their settlements with Arana, Fireman's Fund and United Fire both were named as defendants in Civil Action No. 98-2927, which Arana filed in the Eastern District of Louisiana in connection with his automobile accident. Pursuant to the terms of the settlement of that lawsuit, Arana's attorney has maintained in a trust account $150,000 out of the settlement proceeds obtained from United Fire. The remainder of the funds received from the four automobile insurers has been disbursed.

During the relevant time period, OHP maintained an arrangement under which Subro Audit, Inc., a third-party contractor and subrogation specialist, handled subrogation for OHP. On November 2, 1999, while the federal tort lawsuit remained pending, Subro Audit wrote to Arana's mother and to United Fire, notifying both

that OHP claimed a contractual right to reimbursement of the health benefits it had paid on Arana's behalf.

Arana disputed OHP's right to pursue subrogation and/or reimbursement, and filed the instant lawsuit against OHP in the 24th Judicial District Court for the Parish of Jefferson, both on his own behalf and on behalf of other similarly situated individuals. Specifically, in his petition Arana requests a declaratory judgment "requiring OHP to release its notice of lien and to withdraw and release OHP's subrogation, reimbursement, and assignment claims" against Arana, Fireman's Fund, and/or United Fire. Arana asserts that such claims violate LA. REV. STAT. 22:663.[2] Arana also asks that OHP be ordered to pay statutory penalties and attorney's fees pursuant to LA. REV. STAT. 22:657.[3]

OHP removed Arana's lawsuit to the Eastern District of Louisiana, on the grounds that the petition asserts claims that are completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. OHP then filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) or, alternatively, a motion for summary judgment. OHP's motion focuses on three issues: whether ERISA preempts LA. REV. STAT. 22:663, whether 22:663 prohibits the defendant from claiming subrogation and/or reimbursement rights, and whether Arana failed to exhaust the administrative remedies provided by an ERISA plan prior to filing suit. Arana filed a motion for partial summary judgment seeking a declaration that, under Louisiana law, OHP does not have a right to pursue subrogation and reimbursement for medical expenses that it

paid on behalf of Arana from any amount received by Arana under the United Fire policy. The district court granted Arana's motion and denied the motion filed by OHP. In reaching its decision, the district court found that Arana's petition stated a claim for benefits under 29 U.S.C. § 502(a) that was completely preempted by ERISA.

Pursuant to 28 U.S.C. § 1292(b), OHP appeals the district court's order as to OHP's and Arana's respective motions. On appeal, Arana asserts that subject matter jurisdiction is lacking.[4]

## II.  JURISDICTION

### A.  Complete Preemption and Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. 1441(a). Moreover,

> "[a]ny civil action of which the district courts
> have original jurisdiction founded on a claim or
> right arising under the Constitution, treaties or
> laws of the United States shall be removable
> without regard to the citizenship or residence of
> the parties.  Any other such action shall be
> removable only if none of the parties in interest
> properly joined and served as defendants is a
> citizen of the State in which such action is
> brought."

28 U.S.C. § 1441(b); *see also* 28 U.S.C. § 1331 (granting federal question jurisdiction to district courts).  Because OHP is a

citizen of Louisiana, removal to the district court was proper only if the instant action arises under federal law.

It is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). Accordingly, petitions, such as Arana's, that on their face assert only state law claims generally do not provide a basis for the exercise of federal question jurisdiction. In limited circumstances, however, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). In effect, the application of the complete preemption doctrine converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *McClelland v. Gronwalt*, 155 F.3d 507, 512 (5th Cir. 1998) (citation omitted). Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to federal question jurisdiction, and thus may provide a basis for removal. *Id*.

In particular, certain state law claims that fall within the scope of ERISA section 502(a), 29 U.S.C. § 1132(a), are completely preempted and may be removed to federal court. *See Metro. Life Ins. Co.,* 481 U.S. at 66; *Copling v. Container Store, Inc.,* 174

F.3d 590, 594 (5th Cir. 1999). "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pled as a state action." *Copling*, 174 F.3d at 594. Complete preemption under section 502(a) thus is jurisdictional in nature, rather than an affirmative defense to a plaintiff's claims under state law. *Heimann*, 187 F.3d at 500.

Complete preemption must be distinguished in this regard from ordinary preemption, also known as conflict-preemption. In general terms, ordinary preemption is a federal defense to the plaintiff's suit, and may arise either by express statutory term or by a direct conflict between the operation of federal and state law. *Id.* at 500. In the context of ERISA, section 514(a) provides for the ordinary preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" regulated by that statute. 29 U.S.C. 1144(a). State laws preempted under section 514 therefore are displaced by federal law. *McClelland*, 155 F.3d at 516. However, because ordinary ERISA preemption almost invariably arises as a defense, and thus does not appear on the face of the plaintiff's well-pleaded complaint, ordinary ERISA preemption alone does not authorize removal to federal court. *Id.; see also Heimann*, 187 F.3d at 500.

Accordingly, in determining whether OHP properly removed the instant action to federal court, the dispositive issue is not whether ordinary ERISA preemption affords OHP an effective defense

against Arana's state law claims. Irrespective of whether Arana's claims are subject to ordinary preemption pursuant to section 514, subject matter jurisdiction will not lie unless, through those claims, Arana seeks relief available to him under section 502(a).[5] *See Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439, 442 n.6 (5th Cir. 2002); *McClelland*, 155 F.3d 518-19. It is to this inquiry that we now turn.

**B. Arana's Claims under 22:663 and 22:657**

Arana seeks two forms of relief in his state court petition. First, he requests a declaratory judgment to the effect that LA. REV. STAT. 22:663 bars OHP from asserting both its contractual right of subrogation to Arana's state law personal injury cause of action, and its right to reimbursement from tort settlement funds paid to Arana.[6] Secondly, Arana requests statutory penalties and/or attorney's fees under LA. REV. STAT. 22:657 for what he claims was OHP's wrongful attempt to assert a lien against his tort settlement and to obtain reimbursement therefrom of the health benefits OHP has paid on Arana's behalf.

**1. The 22:663 claim**

In ruling that Arana's state court action was completely preempted by ERISA, the district court determined that Arana's declaratory judgment claim under 22:663 was in fact a claim for benefits, and thus fell within the scope of ERISA section 502(a)(1)(B).[7] The district court erred in that regard. It is undisputed that OHP has paid Arana all of the health benefits due

him under the GHSA between OHP and LeCler Printing.  Arana does not rely on 22:663 in order to seek additional health benefits from OHP, but rather he requests a declaration that OHP is not entitled to a portion of his tort recovery.  Although OHP has not filed a formal claim for subrogation or reimbursement in either state or federal court,[8] it is OHP that seeks to obtain money from Arana, not vice versa.[9]  Arana's claim thus is not one for benefits under section 502(a).  *See Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 495 (7th Cir. 1997).

OHP's assertion that Arana's 22:663 cause of action must be characterized as a claim for benefits because 22:663 on its face speaks only to the exclusion or reduction of benefits similarly is without merit.  Arana's cause of action is completely preempted only if it seeks the same *relief* as that afforded beneficiaries under section 502(a), *see McClelland*, 155 F.3d at 518-19, and Arana's suit simply does not seek health care benefits under the LeCler plan.  OHP argues as a substantive defense that 22:663 does not apply to circumstances such as those present here, in which a health plan does not coordinate or otherwise exclude benefits on the front end, but rather seeks subrogation or reimbursement on the back end.  Whatever the merits of this defense regarding the scope of 22:663, it does not convert Arana's suit challenging OHP's subrogation and reimbursement rights into a claim for benefits.  Just as OHP may assert its ordinary preemption defense in state court, OHP also may argue that 22:663 on its own terms does not

apply to subrogation and reimbursement at all.  However, if a federal defense does not authorize removal to federal court, *Heimann*, 187 F.3d at 500, this state law defense certainly does not do so.

Finally, as an alternative basis for complete preemption, OHP also argues that Arana's 22:663 cause of action is within the scope of 502(a) because through it Arana seeks "to enforce his rights under the terms of the plan."  This theory draws some support as a basis for removal from a footnote in the recent Supreme Court decision *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. ___, 122 S.Ct. 2151 (2002).

In *Rush Prudential*, an ERISA plan participant filed a state court action seeking an order requiring the plan's service provider to comply with a state independent medical review law.  *See Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 964 (7th Cir. 2000). When the service provider sought to remove the original state action to federal court, the district court remanded on the ground that the participant's suit for specific performance of state law obligations was not completely preempted by ERISA.  *Id*.  The participant then filed an amended complaint seeking benefits under the plan, and the service provider successfully removed this amended complaint to federal court.  *Id*. at 965-67.  The case later came before the Supreme Court on review, and the Court in *dicta* questioned the propriety of the district court's first remand order.  The *Rush Prudential* Court specifically stated,

> a suit to compel compliance with [the state
> independent medical review law] in the context of
> an ERISA plan would seem to be akin to a suit to
> compel compliance with the terms of the plan under
> 29 U.S.C. § 1132(a)(3). Alternatively, the proper
> course may have been to bring a suit to recover
> benefits due, alleging that the denial was improper
> in the absence of compliance with [the state law].
> We need not resolve today which of these options is
> more consonant with ERISA.

122 S.Ct. at 2157 n.2.

Although this footnote appears to suggest that a cause of action seeking a declaration that state law trumps plan documents may be properly characterized, in some circumstances, as a completely preempted claim to enforce the terms of the plan, this Court is not persuaded that such a characterization is appropriate under the facts of this case. In the first instance, the Court notes that the terms of the LeCler plan are not in the record on appeal, and it is not clear whether such plan documents exist at all. The parties apparently take for granted that the terms of the GHSA between the LeCler plan and OHP, its health care services provider, are the equivalent of, or are somehow incorporated into, the plan's terms. The fact that the terms of the LeCler plan are so immaterial to Arana's claims that they were never introduced into the record, even when dispositive motions were before the district court, certainly undermines any argument that Arana's cause of action is really an artfully pleaded bid to enforce the terms of his ERISA plan.

Moreover, assuming *arguendo* that the terms of the GHSA are properly considered to be the terms of the LeCler plan, such an

assumption still does not justify characterizing Arana's claim as one to enforce the plan's terms. Arana does not dispute that the GHSA affords OHP the subrogation and reimbursement rights it claims. Arana in fact concedes that he would owe a portion of his tort recovery to OHP if the terms of the GHSA were enforced, but he argues that the relevant provisions in the GHSA are illegal by operation of 22:663.[10] Although Arana's suit to enforce state law over the terms of the plan may be "akin" to a suit to enforce the terms of the plan itself, the fact that a claim is akin to a cause of action authorized under section 502(a) is not enough to support a federal claim under ERISA. This latter point recently has been demonstrated by the Supreme Court itself, which, when squarely confronting the issue, has made fine distinctions in order to determine whether a civil enforcement action is in fact authorized by ERISA. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 714-717 (2002). "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id*. at 712 (emphasis in original) (internal quotations omitted). Congress has not incorporated into section 502(a) a cause of action to enforce an arguably saved state law over the terms of an ERISA plan, and this Court declines OHP's invitation to read this civil enforcement mechanism into the statute.[11]

Because Arana neither relies on 22:663 to seek benefits under the plan nor seeks to enforce the terms of the plan, his 22:663 cause of action does not fall within the scope of section 502(a) and is not completely preempted by ERISA.[12]

**2.  The 22:657 claim**

LA. REV. STAT. 22:657 allows punitive damage awards for an insurer's arbitrary refusal to pay benefits, and mandates the payment of attorney's fees when such a refusal occurs.  *Cramer v. Ass'n Life Ins. Co.*, 569 So. 2d 533, 538 (La. 1990).   In his petition, Arana claims that 22:657 entitles him to statutory penalties and attorney's fees for OHP's wrongful assertion of subrogation and reimbursement rights.

In contrast to 22:657, ERISA's civil enforcement scheme does not afford plan participants or beneficiaries a mechanism for obtaining punitive damages and mandatory attorney's fees such as those sought by Arana.[13]  *See Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 763-64 (5th Cir. 1989); *Sommers Drug Store Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1463-65 (5th Cir. 1986); *Cramer*, 569 So. 2d at 538.  Arana's 22:657 claim cannot "arise under" ERISA for purposes of federal question jurisdiction if ERISA does not authorize the suit. *Bauhaus*, 292 F.3d at 442 n.6 (citing *Franchise Tax Bd. v. Construc. Laborers Vacation Trust*, 463 U.S. 1 (1983); *Metro. Life Ins. Co.*, 481 U.S. 58 (1987)).  Because section 502 does not authorize the relief sought in Arana's 22:657 cause of action, that cause of

action cannot form the basis of federal question jurisdiction. *Id.; see also McClelland*, 155 F.3d at 518.

The cases cited by OHP for their holdings that 22:657 is preempted by ERISA do not warrant a contrary result. Almost all of the cases addressing the issue hold that 22:657 is subject to ordinary preemption under ERISA section 514. *See, e.g., Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 466-67 (E.D. La. 2000); *Chatelain v. S. Baptist Health Sys.*, 907 F. Supp. 206, 208-12 (E.D. La. 1995); *Coles v. Metro. Life Ins. Co.*, 837 F. Supp. 764, 768 (M.D. La. 1993); *Cramer*, 569 So. 2d at 537-541. Notably, many of these cases specifically find that 22:657 is preempted because it creates an alternative remedy that is not authorized under ERISA's civil enforcement scheme. *E.g., Clancy*, 101 F. Supp. 2d at 467; *Cramer*, 569 So. 2d at 538. The fact that a state law conflicts with ERISA, and thus arguably is subject to ordinary preemption, does not authorize removal to federal court. *See McClelland*, 155 F.3d at 516; *Heimann*, 187 F.3d at 500. In the one case cited by OHP that determines that a 22:657 cause of action is completely preempted by ERISA, the district court overlooked this fundamental point of law. *See Taylor v. Blue Cross/Blue Shield*, 684 F. Supp. 1352, 1358-59 (E.D. La. 1988).

OHP's argument that ERISA section 502(a) displaces 22:657 is a defense to Arana's 22:657 claim, and not a basis for converting Arana's state law claim to one arising under federal law. Such a conversion would be impossible, as Arana's state law claim for

punitive damages and mandatory attorney's fees is not authorized under section 502(a). OHP accordingly must assert this defense, as well as any other defense it may have to Arana's 22:657 cause of action, before the state court on remand.

## III. CONCLUSION

Arana does not seek relief available under ERISA section 502(a), and accordingly his state law claims under La. Rev. Stat. 22:663 and 22:657 are not completely preempted by federal law.[14] Because subject matter jurisdiction is lacking, we direct that the instant action be remanded to state court.

*  District Judge of the Southern District of Texas, sitting by designation.

1.  For purposes of this appeal, Arana concedes that the LeCler employee welfare benefit plan is a plan governed by ERISA.

2.  LA. REV. STAT. 22:663 provides:

> Notwithstanding any other provisions in this title to the contrary, no group policy of accident, health or hospitalization insurance, or of any group combination of these coverages, shall be issued by any insurer doing business in this state which by the terms of such policy group contract excludes or reduces the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period. Any group policy provision in violation of this section shall be invalid.

3.  La. Rev. Stat. 22:657 provides, in pertinent part:

> A. All claims arising under the terms of health and accident contracts issued in this state, [except claims for accidental death], shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. Any court of competent jurisdiction in the parish where the insured lives or has his domicile, except a justice of the peace court, shall have jurisdiction to try such cases.

In addition to his penalty claim under 22:657, in his original

state court petition, Arana also sought penalties under Louisiana's Unfair Trade Practices and Consumer Protection Law, LA. REV. STAT. 51:1401-1420. Arana's unfair trade practices claim has since been withdrawn, and on appeal OHP does not argue that this claim supports federal jurisdiction. Accordingly, the withdrawn unfair trade practices claim will not be addressed further.

4. Arana did not petition the district court to remand the instant action to state court, and first raised the argument that his claims were not completely preempted by ERISA only in response to OHP's motion to dismiss. Nonetheless, we must examine the basis of our jurisdiction and, if there is doubt, we must address it. *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999); *Jones v. Collins*, 132 F.3d 1048, 1051 (5th Cir. 1998). Furthermore, when a action is under our appellate review, this Court also must satisfy itself that the district court properly exercised jurisdiction. *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999).

5. The parties dispute whether Arana's state law claims are subject to ordinary preemption. They specifically disagree on the issue of whether LA. REV. STAT. 22:663 and 22:657 are saved from preemption by ERISA section 514(b)(2), which states that "[n]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The scope of this insurance "saving clause" is significantly limited by ERISA's "deemer clause," which provides that neither an ERISA plan nor any trust established under such a plan "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B); *see generally FMC Corp. v. Holliday*, 498 U.S. 52, 60-61 (discussing interaction of saving clause and deemer clause in ordinary preemption analysis of state anti-subrogation law).

"Previous panels of this Circuit, exercising great caution, have used a two-step analysis under both § 514 and § 502(a) in their complete preemption analysis." *Heimann*, 187 F.3d at 502 (discussing *McClelland*), 155 F.3d at 515-17; *see also Copling*, 174 F.3d at 597 n.14 (same). This approach has developed because the "deliberately expansive" nature of section 514 preemption almost always will encompass claims completely preempted by section 502 as well. *Heimann*, 187 F.3d at 502 (citation omitted). However, claims such as those asserted in the instant action, which arguably fall within the ambit of ERISA's insurance saving clause, present a situation in which the two-step analysis may become problematic. *See Rush Prudential HMO, Inc., v. Moran*, 536 U.S. ___, 122 S.Ct. 2151, 2165-67 (2002) (discussing conflict under ERISA between

congressional policies of exclusively federal remedies and the reservation of insurance regulation to the states).  For example, a plaintiff's cause of action may fall within the scope of section 502, and therefore arise under federal law, even though it is grounded in a state law rule of decision that, due to the operation of the saving clause, is not displaced by federal law.  *See UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 376-77 (1999) (applying state insurance law as rule of decision in section 502 (a)(1)(B) suit to recover benefits).

In any event, because, as discussed below, the Court finds that Arana's state law claims are not completely preempted under section 502(a), it may remand without addressing the first step of the *McClelland* two-step complete preemption analysis, and without commenting on the merits of OHP's ordinary preemption defense. *Copling*, 174 F.3d at 597 n.14.  Instead, the merits of this defense will be a matter for the state court to determine on remand.  *See Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 410 (5th Cir. 1991).

6.  OHP's subrogation and reimbursement claims are based upon the following provision in the GHSA between OHP and LeCler Printing:

> If any Member is injured by an act or omission of a third party and if such third party and/or any other third party or entity, including but not limited to the Member's medical, health and accident, uninsured/underinsured motorist, school, and/or no fault insurer(s) (each referred to hereafter as a "Third Party"), is subsequently determined to be liable and/or responsible for the Expenses incurred because of such act or omission or by contract, O/SCHP will be subrogated to, and may enforce the rights of, the Member against the Third Party(ies) for such Expenses.

> In addition to and notwithstanding the subrogation rights granted to O/SCHP, by becoming a Member of O/SCHP and/or accepting benefits under O/SCHP and the provision of health care services by O/SCHP, including payment of the Expenses, each Member does hereby assign and shall be deemed to have assigned to O/SCHP all rights and claims against such Third Party(ies) for such Expenses, including the right to compromise claims independently of the Member, to commence and prosecute any legal proceeding, and to pursue judgments through collection, in its name or in the Member's name.

> Any settlement, compromise, or release by a Member in favor of a Third Party, made in violation of the

provisions of this [section], shall be deemed to include the full amount due O/SCHP, up to the amount of the settlement, compromise or release, regardless of whether the Member receives full or partial recovery from such Third Party, and any funds received by the Member shall be held in trust by the Member and/or his attorney or other representative and paid to O/SCHP without any deductions for attorneys' fees or other costs.

At the time the applicable GHSA was issued to LeCler Printing, OHP was known as Ochsner/Sisters of Charity Health Plan, Inc. (O/SCHP). Subsequently, the name was changed to Ochsner Health Plan, Inc. (OHP), which is used in this opinion.

7.   Section 502(a)(1)(B) creates a civil enforcement mechanism whereby an ERISA plan participant or beneficiary is authorized to bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

8.  Apparently in support of its claim that the federal courts have jurisdiction over the instant action, OHP has asserted in a letter submitted to the Court under FED. R. APP. P. 28(j) that ERISA authorizes OHP to bring suit requesting the imposition of a constructive trust over that portion of Arana's settlement with United Fire that is being maintained in a trust account by Arana's attorney.  In support of this argument, OHP cites *Bauer vv. Gytten*, 2002 U.S. Dist. LEXIS 7246 (D.N.D. Apr. 22, 2002) and *Admin. Comm. of the Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Varco*, 2002 U.S. Dist. LEXIS 530 (N.D. Ill. Jan. 14, 2002).  However, the fact that OHP may have a federal cause of action that it has chosen not to pursue, or even assert as a counterclaim in the instant action, does not convert Arana's state court declaratory judgment action to a claim arising under federal law and thus subject to complete preemption.

9.  Arana's case therefore does not present a situation in which a participant or beneficiary seeks benefits withheld by an ERISA plan pursuant to a plan provision authorizing coordination of benefits, *e.g., Clancy v. Employer's Health Ins. Co.,* 82 F. Supp. 2d 589, 596 (E.D. La. 1999), or in which a participant or beneficiary seeks to recover benefits she claims were wrongly reimbursed to an ERISA plan out of funds recovered from a third party, *e.g. Carducci v. Aetna U.S. Healthcare*, 204 F. Supp. 2d 796, 803 (D.N.J. 2002).  The Court need not address whether a claim brought under the circumstances described in *Clancy* and/or *Carducci* is properly characterized as a claim for benefits under ERISA section 502(a)(1)(B).

10.  Arana's claim is in this regard distinguishable from the claim at issue in the second footnote of the Supreme Court's *Rush Prudential* opinion.  In *Rush Prudential*, the ERISA plan participant argued that the relevant state law created an extra condition with which the plan was required to comply in the course of making benefit determinations.  As a result, the participant essentially claimed that the state law operated to insert additional terms into the plan.  In contrast, Arana asserts that the subrogation and reimbursement provisions contained in the GHSA are illegal under 22:663, not that 22:663 imposes additional duties on OHP.  If the subrogation and reimbursement provisions are struck from the GHSA, as Arana asserts that 22:663 requires, the GHSA still will not afford Arana any affirmative right, enforceable under section 502(a)(1)(B), to retain possession of the full amount of his tort settlement.

Furthermore, Arana's claim is not subject to the alternative characterization discussed in *Rush Prudential*'s footnote two, further limiting the applicability of that footnote to the instant case.  The plaintiff-participant in *Rush Prudential* had not yet received all of the health care benefits she claimed were due her under the terms of the plan, and ultimately sought to obtain additional benefits upon the completion of the independent medical review she requested.  As discussed above, unlike the plaintiff in *Rush Prudential*, Arana already has received all of the benefits due him under the terms of the LeCler plan.

11.  This Circuit previously has refused to comment on the scope of complete preemption under section 502(a), and specifically has refused to address whether the complete preemption doctrine extends only to claims under section 502(a)(1)(B).  *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 n.6; *McClelland*, 155 F.3d at 517 n.34.  Assuming *arguendo* that complete preemption under section 502(a) is not so limited, Arana's 22:663 claim would not fall within the scope of section 502(a)(3) for the same reasons it cannot be characterized as a suit under section 502(a)(1)(B) to enforce the terms of the LeCler plan.  Section 502(a)(3) authorizes plan beneficiaries to bring civil enforcement actions only "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Even putting aside for a moment the potentially problematic technical distinctions between legal and equitable remedies, *see Great-West Life & Annuity Ins. Co.*, 122 S.Ct. at 714-17, Arana alleges that OHP's subrogation and reimbursement claims violate 22:663, not ERISA and not the terms of the LeCler plan.

12.  The Court notes that on one previous occasion a panel of this Circuit has assumed jurisdiction and ruled on the merits of a claim

seeking, under Mississippi law, relief similar to the declaratory judgment requested by Arana. *See Walker v. Wal-mart Stores, Inc.*, 159 F.3d 938 (5th Cir. 1998) (per curiam). "Even though subject matter can be raised *sua sponte*, we take nothing away from our failure to do so" in *Walker*. *Giles*, 172 F.3d at 338 n.12.

13. While ERISA does not authorize punitive damages at all, it does authorize the discretionary award of attorney's fees to a plan participant or beneficiary. 29 U.S.C. § 1132(g)(1).

14. On appeal, OHP argues for the first time that Arana's class allegations are preempted by the Medicare Act, 42 U.S.C. § 1395, and that this Medicare Act preemption provides an additional ground for the exercise of federal question jurisdiction. OHP did not raise this issue either in its Notice of Removal or at any time during which this case was pending before the district court, and we will not consider it now. In any event, there is insufficient information in the record to evaluate this claim by OHP, even if we were to reach its merits.