Chrystele McKANDES, Plaintiff,

v.

**BLUE CROSS AND BLUE SHIELD ASSOC., et. al., Defendants.**

**No. CIV.A. AW–00–3758.**

United States District Court, D. Maryland, Southern Division.

Feb. 4, 2003.

Robert K. Jenner, Janet Willoughby Gershon Getz and Jenner, LLC, Baltimore, MD, Bruce M. Plaxen, Columbia, MD, Kieron F. Quinn, Martin Eugene Wolf, Quinn Gordon and Wolf, LLP, Towson, MD, for Chrystele McKandes.

Lawrence Paul Fletcher–Hill, Gordon Feinblatt Rothman Hoffberger and Hollander, LLC, Baltimore, MD, for Blue Cross and Blue Shield Ass'n.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises out of a subrogation dispute between Plaintiff Chrystele McKandes ("Mckandes"or "Plaintiff"), and Defendants Blue Cross and Blue Shield Association ("BCBS"), Group Hospitalization and Medical Services, Inc. ("GHMS") and CapitalCare, Inc. ("CapitalCare") (collectively referred to as "Defendants"). Pending before this Court is Plaintiff's Motion to Remand [23–1]. The Motion and Oppositions to the Motion have been fully briefed and are now ripe for review. The Court has reviewed the pleadings and the applicable law and has determined that no hearing is deemed necessary. *See* D. Md. R. 105(6). For the reasons stated below, the Court will GRANT Plaintiff's Motion and will remand the case to the Circuit Court for Prince George's County.

## I. FACTUAL BACKGROUND

On March 3, 1999, Plaintiff was involved in a automobile accident. In September, 1999, she received $20,000 from State Farm. Plaintiff alleges that BCBS asserted a lien on Plaintiff's recovery, and that she paid BCBS $3,367.94 to resolve the lien. Plaintiff claims further that on September 17, 1999, she paid $187.37 to BCBS. Thereafter, Plaintiff filed a class action suit against Defendants in the Circuit Court for Prince George's County, alleging, *inter alia*, common law claims based on Defendants' alleged violation of the Maryland Health Maintenance Organization Act ("The Maryland HMO Act"). Plaintiff filed the Complaint on behalf of a class of all persons who (1) are or have been members or insureds of Blue Cross; (2) have received medical or health care treatment or services from Blue Cross; and (3) have been notified by Blue Cross that it had a lien against or a subrogation interest in any monies that the members or insureds had received or would receive from a third party.[1] Defendants subsequently removed the case to this Court.

---

1. Excluded from the class are (1) federal government employees who are insureds under federal employee health insurance contracts governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 *et. seq.;* (2) those individuals who are or have been employees of BCBS and the spouses, parents, siblings and children of all such individuals; (3) BCBS members or insureds who are or have been members of BCBS through ERISA benefit plans that are self-funded; and (4) members or insureds who received their insurance with Defendant through Medicare.

## II. PROCEDURAL BACKGROUND

On May 22, 2001, this Court stayed this case pending resolution by the United States Court of Appeals for the Fourth Circuit of *Riemer v. Columbia Medical Plan.* After the Court of appeals decided *Riemer,* the Court lifted the stay on January 15, 2003.

## III. ANALYSIS

### A. Maryland's Law of Subrogation

After a class of plaintiffs in the *Riemer* challenged their insurer's subrogation rights under their contracts, the Defendants Columbia Medical Plan, removed the action to this Court, alleging that plaintiffs' claims were preempted by ERISA. *See Riemer, supra.* Judge Legg (now Chief Judge Legg), writing for this Court, held that ERISA preempted the Maryland HMO Act. Plaintiffs filed a motion for reconsideration, after which the Court affirmed its decision and dismissed claims against Columbia Plan members covered under plans governed by ERISA. This Court remanded the claims of non-ERISA plan members to state court, explaining that the Maryland courts had not yet determined whether the HMO Act permits subrogation rights.

The Court of Appeals of Maryland held that an insurer's practice of asserting subrogation rights against its members' recoveries violates Maryland law. *Riemer v. Columbia Medical Plan,* 358 Md. 222, 747 A.2d 677 (2000). However, within a few days of the Court of Appeals' decision in *Riemer,* the Maryland legislature amended

the HMO Act, providing for subrogation rights, and making the provisions retroactive to amounts recovered on or after January 1, 1976. *See* Md.Code Ann. Health–Gen. II, § 19–713.1(d). *See also Popoola v. Md–Individual Practice Ass'n.,* 2001 WL 579774, 2001 U.S. Dist. LEXIS 6875 (D.Md.2001).[2]

Plaintiffs appealed the district court's decision to the Fourth Circuit. In a recent unpublished per curiam opinion, the Court of Appeals for the Fourth Circuit noted that it was "unable to ascertain with any degree of reasonable certainty to which class, if any, of plaintiffs involved in this case … belong to". *Popoola,* 2001 WL 579774, *1, 2001 U.S. Dist. LEXIS at *3. The Court stated further that it "cannot determine from the record whether they are members of an ERISA plan which would permit subrogation by Columbia or which would not permit subrogation by Columbia." *Id.* Accordingly, the Court remanded the case to the district court for further proceedings, including ascertaining the relation of each of the named plaintiffs to the Columbia Medical Plan. *Id.* at *1, 2001 U.S. Dist. LEXIS at *4.

### B. Preemption of Maryland's Law of Subrogation

#### 1. The Preemption Provision

ERISA contains a preemption provision declaring that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to employee benefit plans." 29 U.S.C.

---

**2.** In *Popoola,* plaintiff filed suit after defendants asserted liens on and subrogation interests in certain recoveries received by its insureds from third party tortfeasors in violation of Maryland's anti-subrogation provisions. *See Popoola,* 2001 WL 579774, *1, 2001 U.S. Dist. LEXIS 6875 at *3. Plaintiff sought, *inter alia,* a declaratory judgment stating that defendants' insurance contracts granting it subrogation rights are illegal un-

der Maryland law. *See id.* Defendants argued that plaintiff's suit was preempted by ERISA. *See id.* As in the instant case, plaintiff's requested a stay pending the Fourth Circuit's decision in *Riemer.* Explaining that the issues in *Popoola* and *Riemer* are identical, Judge Chasanow granted plaintiffs request for a stay pending the Fourth Circuit's decision in *Riemer.*

§ 1144(a); *see also FMC Corporation v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Swerhun v. Guardian Life Ins. Co.,* 979 F.2d 195, 197 (11th Cir. 1992). This preemption provision contains three stages. *See Swerhun,* 979 F.2d at 197. A state law relates to an employee benefit plan when it has a connection with or a reference to such a plan. *Holliday,* 498 U.S. at 57, 111 S.Ct. 403.

## 2. The Savings Clause

The Scope of ERISA's preemption is limited, however, by the "insurance saving clause" of Section 514(b)(2), 29 U.S.C. § 1144(b)(2)(A); *American Med. Sec. Inc. v. Bartlett,* 915 F.Supp. 740, 743 (D.Md. 1996). The savings clause provides that, except as provided in the deemer clause, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A); *see also Holliday,* 498 U.S. at 60–61, 111 S.Ct. 403. This clause broadly preserves the States' lawmaking power over the insurance industry. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); *Thompson v. Talquin Bldg. Prod. Co.,* 928 F.2d 649, 651 (4th Cir.1991); *Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419, 421 (4th Cir.1985). In determining whether a state law regulates insurance for the purpose of the savings clause, the Supreme Court suggests that courts look to the common-sense view of the language of the savings clause. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987) (explaining that a common-sense view of the word "regulates" suggests that the law

must not just have an impact on the insurance industry, but must be specifically directed toward the industry).

■ The Supreme Court identified three criteria for determining whether a state law regulates insurance. *See Metropolitan Life,* 471 U.S. at 742, 105 S.Ct. 2380. It said that courts should: (1) determine whether the practice has the effect of transferring or spreading a policyholder's risk; (2) determine whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) determine whether the practice is limited to entities within the insurance industry. *See id; see also Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982).

## 3. The Deemer Clause

Once it has been determined that the savings clause applies to the statute, a deemer clause analysis must be conducted. It provides, in pertinent part, that no employee benefit plan "shall be deemed to be an insurance company or other insurer .. or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contacts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

## D. Discussion

■ Defendants removed this case to this Court, arguing that Plaintiff's claims were completely preempted under ERISA.[3] Plaintiff has moved to remand this action back to state court, on the

---

**3.** There are two types of preemption under ERISA—complete preemption and conflict preemption. Complete preemption is limited to claims seeking to recover benefits due under the terms of plan, to enforce rights under the plan, or seeking to clarify rights to further

benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Under conflict preemption, on the other hand, a state claim is preempted if it relates to an ERISA plan. 29 U.S.C. § 1144.

ground that her claims arise under Maryland law, are independent of ERISA, and fall under the savings clause. The Court agrees that remand is appropriate. Because the Fourth Circuit is silent on issues presented in the instant case, the Court will look to other jurisdictions for guidance.

The Fifth Circuit's recent decision in *Arana v. Ochsner Health Plan, Inc.,* 302 F.3d 462, 470 (5th Cir.2002)[4] is instructive in the instant case. After *Arana,* a dependent of a plan beneficiary was severely injured in an automobile accident, the defendant, Oschner Health Plan, Inc., ("OHP") provided health benefits to participants and beneficiaries of the plan pursuant to a Group Health Services Agreement ("GHSA") between OHP and the employer. *Arana,* 302 F.3d at 465. After the accident, Arana's health care providers submitted to OHP claims for services rendered to Arana and OHP paid approximately $180,000 in health benefits for treatment of Arana's accident-related injuries. Four automobile insurance policies provided coverage for the accident. Arana subsequently settled claims under the four policies for a total of $1,112,500.

After receiving notification from OHP that claimed a contractual right to reimbursement of the health benefits it had paid on Arana's behalf, Arana filed suit against OHP in the Louisiana state district court, requesting a declaratory judgment "requiring OHP to release its notice of lien and to withdraw and release OHP's subrogation, reimbursement, and assignment claims" against him. Arana asserted that such claims violated La.Rev.Stat. 22:663. OHP removed Arana's lawsuit to the Eastern District of Louisiana on the grounds that the petition asserts claims that were completely preempted by ERISA. OHP

then filed a motion to dismiss or, alternatively, a motion for summary judgment. In response, Arana asserted lack of subject matter jurisdiction by the court.

The district court concluded that Arana's petition stated a claim for benefits that was completely preempted by ERISA. In reversing, the Fifth Circuit Court of Appeals concluded that Arana's claim was not preempted by ERISA because it was not an action by Arana to enforce his rights *under* the plan, but was merely an attempt to bar defendants claims to any amounts received by plaintiffs. The Court of Appeals observed:

> Moreover, assuming arguendo that the terms of the GHSA are properly considered to be the terms of the [ ] plan, such an assumption still does not justify characterizing Arana's claim as one to enforce the plan's terms. Arana does not dispute that the GHSA affords OHP the subrogation and reimbursement rights it claims. Arana in fact concedes that he would owe a portion of his tort recovery to OHP if the terms of the GHSA were enforced, but he argues that the relevant provisions in the GHSA are illegal by operation of 22:663. Although Arana's suit to enforce state law over the terms of the plan may be 'akin' to a suit to enforce the terms of the plan itself, the fact that a claim is akin to a cause of action authorized under section 502(a) is not enough to support a federal claim under ERISA.

The facts in *Arana* are analogous to those in the present case. In the case before this Court, Plaintiff asserts that she does not seek to clarify her rights to future benefits under the terms of the plan. Her Complaint alleges that Defendants' right to subrogation under the plan is un-

---

**4.** *See Allison v. Wellmark,* 2002 WL 31818946, 2002 U.S. Dist. LEXIS 24168, *infra,* (summarizing the facts of the *Arana* case). In its

analysis, this Court will use the Allison court's summary of both the Arana and Allison cases.

enforceable under state law. The Court agrees that Plaintiff is not seeking an interpretation of the plan or a declaration of her rights under the plan. Another case that sheds light on this Court's analysis is the district court's unpublished opinion in *Allison v. Wellmark,* 2002 WL 31818946, 2002 U.S. Dist. LEXIS 24168 (N.D.Iowa). *Allison* is insightful because it presents facts in contrast to those in *Arana* and allows this Court to distinguish the present case from instances where plaintiffs' claims have arisen from the operation or application of a benefit plan.

In *Allison,* plaintiff Allison sustained injuries in an automobile accident and incurred medical expenses of $135,000 for which her underinsured motorist insurance coverage paid her $126,067.17 and sought subrogation to the proceeds of the underinsured motorist coverage. Plaintiff filed for a declaratory judgment that defendant insurer had no right of subrogation to proceeds. Specifically, Plaintiff sought an interpretation of the plan and a declaration of his rights under the plan. The court held that plaintiff's claim were preempted by ERISA. The Court reasoned:

> The *Arana* decision is distinguishable from the present case. In contrast to the petition involved in *Arana,* plaintiff Allison's petition does not assert that [defendant's] right to subrogation under the plan is unenforceable under state law. Instead plaintiff Allison asserts that "the plan does not provide for subrogation, and that the plan 'is ambiguous in its terms as to what, if any, claims the Defendant could legally claim under the facts of this case." Moreover, plaintiff Allison expressly sought a 'declaratory judgment construing the insurance policy of the defendant and declaring that said defendant has no subrogation rights under the underinsured benefits of Plaintiff's automobile policy.' Thus, Allison, unlike the plaintiff in *Arana,* is seeking an interpretation of the plan.

Such a prayer for relief falls squarely within the scope of §§ 1132(a)(1) and 1132(a)(3)(A). Therefore, the court concludes that plaintiff Allison's claims are completely preempted by ERISA and the court has subject matter jurisdiction to hear this matter.

Based on the discussion above, it is apparent that the facts in *Arana* are akin to those facing this Court and that the Fifth Circuit's analysis is pertinent to this case. Defendant argues, however, that *Arana* is inapplicable and that Plaintiff is in fact, "plainly suing to enforce her rights under the terms of her benefit plan." Whatever plausibility such an argument may have, the Court must reject it because Plaintiff's claims do not include those in *Allison* or those that have been held preempted in previous decisions. Examples of claims that have been preempted include (1) actions alleging improper administration of the plan. *See All Risks Ltd. v. The Equitable Life Assurance Society,* 931 F.Supp. 409, 413 (D.Md.1996) (preempting state law actions alleging the improper processing, administration or handling claims arising from benefits plans); (2) contract actions intertwined with an employee's eligibility of, or receipt of plan benefits. *See Salomon v. Transamerica Occidental Life Ins. Co.,* 801 F.2d 659, 660–61 (4th Cir. 1986) (preempting state common law claims that could give rise to conflicting employer obligations in directly administering the benefits plan); (3) tort actions intertwined with an employee's eligibility for, receipt of, plan benefits. *See Stiltner v. Beretta, U.S.A. Corp.,* 74 F.3d 1473, 1480–81 (4th Cir.1996)(en banc.) (intentional infliction of emotion distress claim based upon employer's alleged termination of employee to avoid paying her benefits was preempted); (4) state laws that conflict with the provisions of ERISA or operate to frustrate its objectives. *See Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct.

1754, 138 L.Ed.2d 45 (1997) (preempting application of Louisiana's community property law which would have allowed first wife to make a testamentary transfer of her interest in participant's retirement benefits and survivor's annuity); and (5) state laws that require employers to provide certain benefits. *See Metropolitan Life* 471 U.S. 724, 105 S.Ct. 2380 (holding that a state law requiring benefit plans to include minimum benefits related to ERISA plans).

Plaintiff's claims in the instant case fall into none of the five categories listed above. Plaintiff seeks only that BCBS be barred from asserting any contractual right to subrogation and reimbursement from tort settlement funds paid to Plaintiff. As such, Plaintiff's claim is not one for benefits under the terms of the plan but one for a declaration that BCBS is not entitled to a portion of her tort recovery. The Court notes that, even if it should find that Plaintiff's claims somehow fell within the reach of the ERISA's preemption clause, those claims would, nevertheless, be "saved from preemption under ERISA's saving clause." *Medical Faculty v. Aetna,* 221 F.Supp.2d 618, 621 (D.Md. 2002). Plaintiff's claims involve defendants conduct, not the terms of the plan. Claims involving conduct, and not rooted in the plain language of the plan do not implicate ERISA's enforcement clause. *See Dukes v. U.S. Healthcare,* 57 F.3d 350 (3rd Cir.1995). Moreover, Defendants strenuous argument that Plaintiff's claims are preempted is unavailing because of the tenuous relationship between Plaintiff's claims and the terms of the plan. *See Shaw v. Delta Air Lines,* 463 U.S. 85, 100, 103 S.Ct. 2890, 77 L.Ed.2d 490 n. 21 (1983) (noting that some state actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant finding that the law relates to the plan).

Accordingly, the Court remands the case to the Circuit Court for Prince George's County, Maryland for further proceedings under the wise judgment of the state judges.

## IV. CONCLUSION

For the reasons stated above, the Court will GRANT Plaintiff's Motion to Remand. An Order consistent with this Opinion will follow.