Shade POPOOLA

v.

**MD–INDIVIDUAL PRACTICE ASSOCIATION, INC., et al.**

**No. CIV.A. DKC 2000–2946.**

United States District Court, D. Maryland.

Feb. 4, 2003.

Frank Paul Bland, Jr., Trial Lawyers for Public Justice, Washington, DC, for Plaintiff.

Lawrence Paul Fletcher-Hill, Gordon, Feinblatt, Rothman, Hoffberger and Hollander LLC, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is Plaintiff's renewed motion to remand.[1] The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion will be granted.

### I. Background

Plaintiff Shade Popoola initially filed this action in the Circuit Court for Montgomery County, alleging state law causes of action against three defendants.[2] The controversy concerns subrogation rights of a health maintenance organization when a member or insured obtains recovery from a third party for injuries giving rise to

---

1. The motion to lift the stay is moot. The case was reopened on November 1, 2002.

2. Plaintiff's counsel has filed several similar suits, against different health providers. *See, e.g. Riemer v. Columbia Medical Plan, Inc.,* No. BEL 96–2544; *Singh v. Prudential Health Care Plan, Inc.,* No. AW 00–2168 (now on appeal); *Sewell v. Aetna U.S. Healthcare, Inc.,* No. DKC 00–2169; and *McKandes v. Blue Cross and Blue Shield,* No. AW 00–3758.

medical expenses. Defendants removed the case to this court, asserting federal question jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiff moved to stay or, in the alternative, to remand the action, contending first that the case should be stayed pending resolution of a case raising similar issues then pending before the United States Court of Appeals for the Fourth Circuit, and second, that the case should be remanded to state court because it does not present a federal question. The court determined to stay the action pending decision in *Riemer v. Columbia Medical Plan, Inc.* That case had now been decided: 43 Fed.Appx. 576, 28 Empl Ben. Cas. 2550, 2002 WL 1808682 (4th Cir.2002), and this case has been reopened.[3]

Plaintiff has since filed an Amended Complaint, in which she alleges that Defendant M.D.-Individual Practice Association, Inc., ("M.D.IPA") asserted liens on and subrogation interests in certain recoveries received by its insureds from third party tortfeasors in violation of anti-subrogation provisions of the Maryland Health Maintenance Organization Act ("Maryland HMO Act"), MD. CODE ANN., HEALTH–GEN. II §§ 19–701(f)(3) and 19–710(*o*). Plaintiff seeks to bring a class action suit against health maintenance organizations ("HMOs") M.D. IPA, Optimum Choice, Inc., and MAMSI Life and Health Insurance Company for unjust enrichment (Count I) and negligent misrepresentation (Count II). Plaintiff seeks a declaratory judgment that, prior to June 1, 2000, M.D. IPA was unjustly enriched by its practice of claiming and receiving asserted liens against and subrogation interests in monies that its members and insureds received from third parties or Personal Injury Protection carriers ("PIP recoveries"). Plaintiff further seeks equitable relief, including restitution, compensatory damages, attorneys' fees and costs.

Plaintiff alleges that she was covered under an M.D. IPA health plan containing a subrogation provision, which provides that if a "covered person" is injured and, as a result of the injury, recovers money from a third party, then M.D. IPA may exercise subrogation rights to the extent of the benefits received under the contract. Plaintiff does not dispute that the plan under which she is covered is an ERISA plan provided by her employer. On September 3, 1998, Popoola received $20,000 from another insurer to resolve a claim arising from an automobile accident. M.D. IPA allegedly asserted a lien against the recovery, and Plaintiff paid Defendants $3,367.94. According to the complaint, prior to June 1, 2000, M.D. IPA regularly asserted subrogation rights against its members.

In May 2000, the Court of Appeals of Maryland held that an insurer's practice of asserting subrogation rights against its members' recoveries violated Maryland law. *Riemer v. Columbia Medical Plan*, 358 Md. 222, 747 A.2d 677 (2000). Within a few days of that decision, however, the Maryland legislature amended the Maryland HMO Act expressly to provide for subrogation rights and made the provisions retroactive to any amounts recovered on or after January 1, 1976. *See* MD. CODE ANN., HEALTH–GEN. II § 19–713.1(d) (Editor's note). On August 29, 2002, the Court of Appeals of Maryland struck down the retroactive portion of the legislation in *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 805 A.2d 1061 (2002).

**3.** After remand by the appellate court, *Riemer* was remanded by the District Court to the Circuit Court for Howard County, upon the consent of all parties.

Plaintiff has filed a renewed motion to remand, contending that *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) and *Arana v. Ochsner Health Plan, Inc.,* 302 F.3d 462 (5th Cir.2002) make it unmistakably clear that her claims are not preempted by ERISA and should be sent back to state court. Defendants continue to argue that this action is preempted by ERISA because Plaintiff's action arises under the enforcement section, thus providing federal jurisdiction.

## II. Analysis

■■■ When a complaint contains state law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims, and the action may be removed to federal court.

*Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 187 (4th Cir.2002).[4] "A state claim is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502." *Id.* at 191.[5]

ERISA's civil enforcement provisions give the right to sue "to force disclosure of certain information, to recover benefits due under the plan, to clarify the right to future benefits, or to enforce rights under ERISA or the plan." *Id.* at 192. Defendants contend that Plaintiff's claims are an attempt to enforce her rights under the terms of her benefit plan. They argue that Plaintiff's action will require the court to construe the plan and "to modify the terms of the plan by striking the reimbursement/subrogation terms." Despite the energy with which Defendants make this argument, the court disagrees.

As noted above, there are two separate provisions concerning ERISA preemption: 29 U.S.C. § 1144(a), ERISA's preemption provision, and 29 U.S.C. § 1132(a), ERISA's civil enforcement provision. *Custer v. Sweeney,* 89 F.3d 1156, 1165 (4th Cir.1996) (courts look to both the preemptive scope (preemption provision) and force (civil enforcement provision) of ERISA in applying the complete preemption doctrine). ERISA's civil enforcement provision states, in pertinent part, that a person

4. The *Darcangelo* court contrasted this complete preemption with ordinary conflict preemption under § 514: state laws are superseded insofar as they "relate to" an ERISA plan. *Id.* ERISA's preemption provision provides that "[e]xcept as provided in subsection (b) ["saving clause"] ... the provisions of this ... Chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). The saving clause provides "[e]xcept as provided in subparagraph (B) [the "deemer clause"], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ...." 29 U.S.C. § 1144(b)(2)(A).

5. The court further explained some aspects of the relationship between the two types of preemption:

While the tests for the two categories of preemption are different, they sometimes

overlap. Because the "relate to" question in this case turns on whether Darcangelo's claims are alternative enforcement mechanisms to § 502, the conflict preemption and complete preemption tests are the same here. To put it another way, when a state law is completely preempted as an alternative enforcement mechanism under § 502, it will also be "relate[d] to" an ERISA plan and preempted under § 514. On the other hand, a state law that is preempted under § 514 (conflict preemption) will not always be preempted under § 502 (complete preemption). For example, a law that mandates employee benefit structures might not be completely preempted as an alternative enforcement mechanism under § 502, but it would still be preempted according to ordinary conflict preemption principles because it is related to the ERISA plan under § 514. *Darcangelo,* 292 F.3d at 191, n. 3.

may bring a civil action "to recover benefits due to him … to enforce his rights … or to clarify his rights to future benefits under the terms of the plan …." 29 U.S.C. § 1132(a)(1)(B). An action cannot be removed to federal court unless it falls within the scope of the civil enforcement provision. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

In *McKandes v. Blue Cross and Blue Shield Assoc., et al.,* 243 F.Supp.2d 380 (D.Md.2003), Judge Williams thoroughly explored *Arana v. Ochsner Health Plan, Inc.,* 302 F.3d 462 (5th Cir.2002), and concluded that the claims being asserted by McKandes and the class proposed to be represented, were not preempted. He pointed out the types of claims that have been preempted, none of which applied. This case is indistinguishable from *McKandes.* Plaintiff here is not seeking any interpretation of her plan. Rather, she contends that the plan, which clearly provides for subrogation, violates Maryland anti-subrogation law. As such, Plaintiff is not attempting to enforce a provision of her plan in any way.

Judge Williams also pointed out, moreover, that even if McKandes' claims related to an ERISA plan, "those claims would, nevertheless, be 'saved from preemption under ERISA's saving clause.'" As the Fifth Circuit observed in *Arana,* though, it is not necessary to address that issue, and that matter is left for the state court to determine on remand. *Arana,* 302 F.3d at 468, n. 5.[6]

Accordingly, by separate order, the case will be remanded to the Circuit Court for Montgomery County.

6. The remand in *Riemer* also expressly left conflict preemption for resolution by the state

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of February, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's renewed motion for remand BE, and the same hereby IS, GRANTED;

2. This case BE, and the same hereby IS, REMANDED to the Circuit Court for Montgomery County;

3. The clerk take all necessary steps to effectuate this remand promptly; and

4. The clerk transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.