Jean LEVINE, Plaintiff,

v.

UNITED HEALTHCARE
CORP., Defendant.

Noreen Bogurski, Plaintiff,

v.

Horizon Blue Cross Blue Shield
of New Jersey, Defendant.

Benjamin Edmonson, Plaintiff,

v.

Horizon Blue Cross Blue Shield
of New Jersey, Defendant.

Nos. Civ.A. 01–4964(JBS), Civ.A. 01–
5339(JBS), Civ.A. 01–5812(JBS).

United States District Court,
D. New Jersey.

Oct. 6, 2003.

Frank P. Solomon, Weitz & Luxenberg, P.C., Cherry Hill, NJ, and Donna Siegel Moffa, Lisa Rodriguez, Trujillo, Rodriguez & Richards, LLC, Haddonfield, NJ, and Natalie Finkelman Bennett, James C. Shah, Shepherd, Finkelman, Miller & Shah, LLC, Turnersville, NJ, Attorneys for Plaintiffs Levine, Bogurski, and Edmonson.

Edward A. Scallet, William F. Hanrahan, Jason H. Ehrenberg, Groom Law Group, Chartered, Washington, DC, and Theodore D. Aden, Leboeuf, Lamb, Greene & Macrae, LLP, Newark, NJ, Attorneys for Defendant United Healthcare Corporation.

Edward S. Wardell, Kelley, Wardell & Craig, LLP, Haddonfield, NJ, Attorney for Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross and Blue Shield of New Jersey.

### *OPINION*

SIMANDLE, District Judge.

The present consolidated cases are before the Court on the motions of the parties for this Court to certify three issues for interlocutory appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 1292(b). Defendants seek to appeal the Court's determination regarding two issues in the March 4, 2003 motion to dismiss decision, *see Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596 (D.N.J.2003), and the plain-

tiffs seek to appeal the Court's determination regarding one issue in the May 28, 2002 motion to remand decision, *see Carducci v. Aetna U.S. Healthcare*, 204 F.Supp.2d 796 (D.N.J.2002).[1]

Defendants wish to appeal the Court's finding that (1) the antisubrogation rule included in New Jersey's collateral source statute, as interpreted by the New Jersey Supreme Court in *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), applies to defendant health insurers because it is not conflict preempted under ERISA section 514(a) because it is "saved" as a state law that regulates insurance,[2] and (2) that the *Perreira* decision applies retroactively to plaintiffs' pre-*Perreira* health insurance plans. Plaintiffs seek to appeal the Court's finding that their unjust enrichment claims are claims for "benefits due" within the meaning of ERISA section 502(a), and

therefore were properly removed to federal court.

The Court has considered the motions and has decided, for the reasons explained herein, to certify these three issues for interlocutory appeal. The Court will stay further proceedings before this Court pending resolution of this matter with the United States Court of Appeals for the Third Circuit.

## I. *BACKGROUND*

The plaintiffs and defendants in these consolidated Employee Retirement Income Security Act of 1974 ("ERISA") cases seek leave to file an interlocutory appeal of three issues determined by this Court in two prior decisions, namely the motion to remand decision dated May 28, 2002, and the motion to dismiss decision dated March 4, 2003.[3] The contested issues in-

---

1. The pertinent previous opinions bear the name of the previous lead case, *Carducci v. Aetna U.S. Healthcare*, Civ. No. 01–4675(JBS). The *Carducci* case was closed on April 17, 2003 after this Court approved a Rule 68, Fed.R.Civ.P., Offer of Judgment which was accepted by the named plaintiffs in the *Carducci* case. *Levine v. United Healthcare Corp.*, Civ. No. 01–4964(JBS), is now the lead case in this matter.

2. The Court considered three ERISA clauses to determine that the *Perreira* antisubrogation rule was not conflict preempted under section 514(a). Defendants only seek appeal on the savings clause issue, namely that the savings clause of section 514(b)(2)(A), which "saves" state laws from preemption if they govern insurance, saves the New Jersey antisubrogation rule.

    Defendants do not request certification of the Court's finding that the antisubrogation rule relates to employee benefit plans under ERISA section 514(a), or that the antisubrogation rule applies here in spite of the "deemer clause" of ERISA section 514(b)(2)(B), which removes self-funded employee benefit plans from the application of state laws that regulate insurance.

3. The procedural history of the cases is lengthy and need not be recounted in full in

this background section, except as it relates to the present motions. The Court will summarize the disposition of the various cases here, though, which reduced the cases involved in the present motions to three, namely *Levine v. United Healthcare Corp.*, Civ. No. 01–4964(JBS); *Borgurski v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 01–5339(JBS); and *Edmonson v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 01–5812(JBS).

On January 25, 2002, the Court consolidated *Levine*, *Bogurski*, and *Edmonson* with *Carducci, et al. v. Aetna U.S. Healthcare*, No. 01–4675(JBS); *West v. Health Net of the Northeast*, Civ. No. 01–5217(JBS); and *Collins v. Oxford Health Plans*, Civ. No. 01–5237(JBS). The plaintiffs in the consolidated cases submitted a motion to remand to state court, which was denied on May 28, 2002. *See Carducci v. Aetna U.S. Healthcare*, 204 F.Supp.2d 796 (D.N.J.2002).

The defendants in the consolidated cases then filed a motion to dismiss, and the parties in two additional cases joined the motion. *See Bibbs v. AmeriHealth, Inc.*, Civ. No. 02–1155(JBS); *Barbour v. Cigna Corp.*, Civ. No. 02–417(JBS). The motion to dismiss was denied on March 4, 2003. *See Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596 (D.N.J. 2003).

volve complicated issues regarding ERISA, a 2001 New Jersey Supreme Court case *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), and New Jersey's law of retroactivity.

The New Jersey Supreme Court, in *Perreira v. Rediger* held that New Jersey's collateral source statute, N.J.S.A. 2A:15–97,[4] includes an antisubrogation rule which prevents health insurers who have expended funds on behalf of their insureds from recouping the funds through a subrogation or reimbursement liens in the event that an insured recovers from a third-party tortfeasor. The plaintiffs, who were insureds under employee benefit health plans, assert that their plans paid health benefits for their personal injuries and then placed subrogation or reimbursement liens on their tort recoveries should they recover from a third party tortfeasor. The plaintiffs alleged that the defendant health insurers were unjustly enriched by the liens since the liens are not permitted by New Jersey's collateral source statute as interpreted by *Perreira*.

In early 2002, the Court considered motions to remand which were filed by the plaintiffs. The issue before the Court was whether the monies that plaintiffs

---

Two other motions were also decided on March 4, 2003. The first was defendant Amerihealth's motion for summary judgment in *Bibbs,* asserting that there was no case or controversy because Amerihealth had never asserted a subrogation lien against the named plaintiff and had withdrawn its liens after *Perreira.* The Court granted the motion for summary judgment on March 4, 2003, and closed the *Bibbs* case. The second motion was Cigna Corp.'s motion to dismiss and compel arbitration in *Barbour.* The Court agreed that arbitration was required pursuant to the arbitration clause in the insurance agreement, granted the motion to dismiss and to compel arbitration on March 4, 2003, and closed the case.

While the motions to dismiss were pending, on August 29, 2002, defendant Aetna made an offer of judgment to the named plaintiffs in *Carducci* for the maximum monetary relief that plaintiffs could obtain for their individual claims if they won on the merits. Plaintiffs accepted the offers on August 30, 2002, and on April 16, 2003, the Court approved the judgments pursuant to Rule 23(e), Fed.R.Civ. P., and closed the case.

After defendants in the remaining cases had filed the present motion for certification of an interlocutory appeal, and the plaintiffs had filed their cross-motion, defendants Health Net and Oxford Health in *West* and *Collins* sought leave to file motions for summary judgment before this Court's decision on the present motions to assert that their plaintiffs' cases had become moot because they had withdrawn their liens and had never asserted them against the named plaintiffs. All parties agreed to the adjournment of the present motions, and on May 14, 2003, Health Net and Oxford Health filed their motions for summary judgment. Plaintiffs then requested additional time for discovery, which was granted. After receiving supplemental submissions from the parties, the Court granted summary judgment in favor of Health Net and Oxford Health on August 7, 2003 and closed the *West* and *Collins* cases. *See West v. Health Net of the Northeast,* 217 F.R.D. 163 (2003).

Remaining before the Court for the present motions, therefore, are solely the *Levine, Borgurski,* and *Edmonson* cases.

4. N.J.S.A. 2A:15–97 provides, in pertinent part:

In any civil action brought for personal injury or death, except actions brought pursuant to ... 39:6A–1 et seq., if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

sought—which were monies that the insurers took pursuant to the subrogation clauses in the employee benefit healthcare contracts—were "benefits due" under ERISA section 502(a)(1)(B). This Court, in an Opinion and Order dated May 28, 2002, determined that the monies were "benefits due" under section 502(a)(1)(B), so that the state law unjust enrichment claims were completely preempted by federal law and were properly removed to federal court. *See Carducci, et al. v. Aetna U.S. Healthcare,* 204 F.Supp.2d 796 (D.N.J.2002). Plaintiffs presently seek to file an interlocutory appeal of the Court's determination of this issue.[5]

Following the remand decision, the Court considered the consolidated defendants' motion to dismiss, which it denied on March 4, 2003. *Carducci v. Aetna U.S. Healthcare,* 247 F.Supp.2d 596 (D.N.J. 2003). Defendants presently seek to file an interlocutory appeal of two of the Court's findings. The first is the Court's determination that plaintiffs' claims were not conflict preempted by ERISA section 514(a) because the New Jersey antisubrogation rule is saved from ERISA preemption as a state law regulating insurance. The second is the Court's finding that the New Jersey Supreme Court's 2001 decision in *Perreira* applies retroactively to plaintiffs' pre-*Perreira* insurance policies because it represents the prior law of New Jersey.

Defendants filed their present motion to certify the two motion to dismiss issues on March 18, 2003. Plaintiffs then filed their cross-motion to certify the motion to remand issue on April 7, 2003. The Court has considered the submissions of the parties, including their oral arguments on April 24, 2003, and finds, for the following reasons, that the three issues should be certified for interlocutory appeal.

## II. DISCUSSION

█ The district court has discretion, pursuant to 28 U.S.C. § 1292(b), to certify issues for interlocutory appeal to the United States Court of Appeals, provided that "exceptional circumstances" justify the departure from the general rule that appellate review is only available after a final order. 28 U.S.C. § 1292(b);[6] (*see also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Hulmes v. Honda Motor Co., Ltd.,* 936 F.Supp. 195, 208 (D.N.J.1996), *aff'd,* 141 F.3d 1154 (3d Cir.1998)); *Carducci v. Aetna U.S. Healthcare,* 2002 WL 31262100 (D.N.J. Jul.24, 2002). To show that "exceptional circumstances" justify certification, the moving party bears the burden of showing (1) that the order at issue involves a controlling issue of law,

5. Plaintiffs previously sought to file an interlocutory appeal of this issue in June 10, 2002. The Court denied their motion without prejudice in a July 24, 2002 Opinion and Order because plaintiffs had not shown a substantial ground for difference of opinion on the issue or that an interlocutory appeal would materially advance the ultimate termination of the litigation.

6. 28 U.S.C. § 1292(b) provides, in part:
   When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

which if erroneously decided, would result in reversible error on final appeal, (2) that there is substantial ground for difference of opinion about the resolution of the issue, and (3) that an immediate appeal will materially advance the ultimate termination of litigation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754–55 (3d Cir.1974); *Waldorf v. Borough of Kenilworth*, 959 F.Supp. 675, 679 (D.N.J.1997).

### A. *Defendants' Motion to Certify Two Issues in the March 4, 2003 Motion to Dismiss Decision*

Defendants seek certification to appeal this Court's decision regarding two legal issues in the March 4, 2003 Opinion and Order, namely: (1) that the antisubrogation rule contained in New Jersey's collateral source statute, as interpreted by the New Jersey Supreme Court in *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), applies to defendant health insurers because it is "saved" from conflict preemption under ERISA section 514(a) as a state law that regulates insurance, and (2) that the *Perreira* decision applies retroactively to the pre-*Perreira* health insurance policies at issue in this case.

It is clear that these two issues are controlling issues in this matter and that certification of their appeal now could materially advance the termination of this litigation because an incorrect decision on either issue would result in reversible error on appeal. If, contrary to this Court's decision, the antisubrogation rule of N.J.S.A. 2A:15–97 is preempted by ERISA section 514(a), then the New Jersey anti-subrogation rule would not apply to the defendant health insurers' ERISA plans and plaintiffs would be unable to assert rights arising under New Jersey law. Likewise, if the 2001 *Perreira* decision were to apply prospectively only, contrary to this Court's decision, then the plaintiffs could not obtain the protection of the *Perreira* antisubrogation rule because it would not apply to plaintiffs' pre-*Perreira* health insurance plans.

As a result, the main issue on this motion is whether defendants have shown that there are substantial grounds for difference of opinion regarding the Court's decision on these issues. The Court finds that there are, so that all three section 1292(b) requirements for interlocutory certification have been met and this Court will certify these issues for appeal.

### 1. Savings clause issue

■ There is a substantial ground for a difference of opinion on this Court's ERISA's insurance savings clause ruling, which is based on, what the United States Supreme Court has described as, "statutorily complex[ ]" preemption provisions. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ This Court, in its March 4, 2003 Opinion, explained then-existing law which was pertinent to the determination about whether a law "regulates insurance" under ERISA's savings clause. 29 U.S.C. § 1144(b)(2)(A);[7] *Carducci*, 247 F.Supp.2d at 614–17. The law has since changed. At

---

7. The savings clause "saves" state laws regulating insurance from the effect of the express preemption clause which broadly preempts state regulations of employee benefit plans, meaning that employee benefit plans may be subject to the particular state law. *See* 29 U.S.C. § 1144(a). The savings clause, states:

Except as provided in subparagraph (B) [the deemer clause], nothing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities.

29 U.S.C. § 1144(b)(2)(A). The deemer clause, ERISA section 514(b)(2)(B), then removes self-funded employee benefit plans from the application of state laws that regulate insurance. 29 U.S.C. § 1144(b)(2)(B).

the time of this Court's March 4, 2003, decision, the Supreme Court required an inquiry which "start[ed] with a common-sense view of the matter under which a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry," focusing on the "primary elements of an insurance contract[, which] are the spreading and underwriting of a policyholder's risk." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365–66, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (quoting *Metropolitan Life Ins. Co.*, 471 U.S. at 740, 105 S.Ct. 2380; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Then the court was to "test the results of the common-sense inquiry" by considering the three McCarran–Ferguson Act[8] factors which determine whether a law is an insurance law, namely whether the law targets practices that (1) have the "effect of transferring or spreading a policyholder's risk," (2) are an "integral part of the policy relationship between the insurer and the insured," and (3) are "limited to entities within the insurance industry." *Rush Prudential*, 122 S.Ct. at 2163, 122 S.Ct. 2151 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)).

■ Since this Court's March 4th decision, the Supreme Court on April 2, 2003, issued its decision in *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). There, the Court decided to make a "clean break from the McCarran–Ferguson factors" because "our use of the McCarran–Ferguson case law in the ERISA context has misdirected attention, failed to provide clear guidance to lower federal courts, and ... added little to the relevant analysis." *Id.* at 1478–79. As a result, the Court enunciated two requirements needed "for a state law to be deemed a 'law ... which regulates insurance' under section 1144(b)(2)(A)." *Id.* at 1479. First, the "state law must be specifically directed toward entities engaged in insurance." *Id.* Second, the "state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id.*

This Court's decision is supportable under both the law as it existed on March 4, 2003, and the law as it exists after the *Miller* decision. First, under the law of *Rush Prudential* and *Pilot Life*, the antisubrogation rule contained in the New Jersey collateral source statute is a state law directed toward the insurance industry because, according to the *Perreira* court, it was enacted to contain "spiraling insurance costs." The McCarran–Ferguson factors also support its status as a state insurance law because the antisubrogation rule (1) spreads a policyholder's risk by ensuring that health insurers will pay for medical costs arising from an insured's tort damages, (2) is an integral part of the policy relationship between the insurer and the insured because it "requires plan providers to calculate benefit levels and premium amounts with the knowledge that they will be unable to recover monies expended for injuries caused to their insured by a third person," and (3) only affects entities within the insurance industry because the New Jersey Supreme Court found that it targets the insurance industry and only applies to the insurance industry. *Carducci*, 247 F.Supp.2d at 616–17. Second, under the law of *Miller*, the

---

8. The McCarran–Ferguson Act requires that the business of insurance be subject to state regulation, and, subject to few exceptions, provides requires that "[n]o Act of Congress shall be construed to invalidate ... any law enacted by any State for the purpose of regulating the business of insurance ..." *Moran*, 122 S.Ct. at 2159 n. 4 (quoting 15 U.S.C. § 1012(b)).

antisubrogation rule is a law regulating insurance because it (1) is specifically directed toward entities engaged in insurance as it ensures that the health insurers, and not the liability insurers, pay for tort injuries, and (2) substantially affects the risk pooling arrangement between the insurer and the insured because the Court has held that a rule which "governs whether or not an insurance company must cover [certain] claims ... dictates to the insurance company the conditions under which it must pay for the risk it has assumed [and] certainly qualifies as a substantial effect on the risk pooling arrangement between the insurer and insured." *See Miller*, 123 S.Ct. at 1478 n. 3.[9]

Even though the Court's decision is supportable, the Court recognizes that the issues involved in this case are complex and subject to debate. Defendants assert that this Court erred by isolating the anti- subrogation provision from the rest of the collateral source statute. According to their argument, if the "state law" at issue here were the collateral source statute in its entirety, instead of just the antisubrogation provision within it, this Court would have erred under either savings clause analysis. Under the law of *Rush Prudential* and *Pilot Life*, the collateral source statute would not be considered an insurance law because it is not specifically directed toward the insurance industry since it "applies in every case in which a plaintiff might obtain a double recovery, even when the rule has no impact whatsoever on the insurance industry," and because, under the McCarran–Ferguson factors, it (1) may not spread a policyholder's risk because health insurers accept the risk that an insured will be injured when they contract with the insured, regardless of the collateral source statute,[10] (2) it may not be an

**9.** The Supreme Court in *Miller* explained that it has "never held that state laws must alter or control the actual terms of insurance policies to be deemed 'laws ... which regulate insurance' under section 1144(b)(2)(A); it suffices that they substantially affect the risk pooling arrangement between insurer and insured." 123 S.Ct. at 1477. Thus, it found that a notice-prejudice rule, which governs whether an insurance company must cover late claims, had an effect on the risk pooling arrangement. *Id.* at 1478.

Here, the antisubrogation rule could be found to both "alter or control the actual terms of insurance policies" by requiring health insurance companies to remove the subrogation clauses from their contracts, and to govern the claims that a company must assume risk for by dictating that the health insurer cover all claims for tort injuries.

**10.** Defendants argue that the collateral source statute does not spread risk because the insurance company contracted to reimburse the insured for all medical expenses and will continue to do so regardless of the effect of the collateral source statute. Their argument ignores though, that, "when looking to see if a particular practice statute acts to spread the risk," the court should "focus upon the actual risks that were transferred from the insured

to the insurer and determine if the practice statute acts to alter the contractual apportionment of those risks." *Tingle v. Pac. Mut. Ins. Co.*, 996 F.2d 105, 108 n. 13 (5th Cir.1993). Here, the parties contracted for the health insurer to reimburse the insured for all medical expenses subject to the health insurer's right to recover for the payments from the insured's tort settlement. The antisubrogation rule alters that contractual arrangement; now the insurer must reimburse the insured for all medical expenses, retaining no right to recover.

Moreover, defendants have supported this arguments with citations to *Tingle*, 996 F.2d at 108 and *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 569 (11th Cir.1994), cases which involved insurance practice statutes, rather than mandated benefits statutes. Mandated benefits statutes "force insurers to provide coverage to all policyholders for medical expenses stemming from illnesses the insured contracted (such as cancer) ... while under coverage of an insurance policy," and thus spread the risk of that certain illness to all policyholders in the state. *Tingle*, 996 F.2d at 108–09. "Nearly every court that has addressed the question" has found that "mandated benefits" statutes regulate insurance

integral part of the policy relationship between the insurer and the insured if its only impact is on health insurance premiums,[11] and (3) it affects entities beyond the insurance industry because it applies in "all civil actions" to benefits from "any other source." [12] Under the law of *Miller*, defendants' arguments are basically the same, namely that the collateral source rule (1) is not specifical[l]y directed toward entities engaged in insurance because, by its express terms, it applies in "all civil actions" to amounts obtained from "any other source," and (2) does not substantially affect the risk pooling arrangement between the insurer and the insured because the insurer is required to provide benefits in the first instance regardless of the rule.

The Court can distinguish defendants' arguments and still concludes that its decision bears the correct analysis and result. *See* notes 10, 11, 12, *supra.* However, the issue on this motion is whether there is

substantial ground for debate on this issue and this Court finds that the question involved here is admittedly complicated and sufficiently close that reasonable minds could disagree with this Court's conclusion. Therefore, this Court finds that it is appropriate to certify this issue for an interlocutory appeal to the Third Circuit at this point in the litigation.

### 2. Issue regarding retroactivity

■ The Court also finds that there is a substantial ground for disagreement about this Court's March 4, 2003 finding that the 2001 *Perreira v. Rediger* decision applies retroactively to govern the terms of the pre-*Perreira* insurance policies at issue here.

■ The Court, in its March 4th Opinion, explained New Jersey's law regarding the retrospective application of judicial decisions. *See Carducci,* 247 F.Supp.2d at 617–19. In New Jersey, judicial decisions

---

and are within the scope of the insurance savings clause. *Metro. Life Ins. Co. v. Mass. Travelers Ins. Co.,* 471 U.S. 724, 729, 742 n. 18, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Insurance practice statutes, on the other hand, require insurers to follow proper insurance procedures, and thus do not "affect the apportionment of risks" because they do not change the originally contracted-for medical coverage. *Smith,* 14 F.3d at 570.

Here, the statute can be classified as a mandated benefit statute, which would be considered one that spreads risk, because it forces health insurers to provide coverage for medical expenses stemming from tortuous conduct. Pursuant to the law, policyholders statewide bear the risk of injuries arising from tortuous conduct through their health insurance premiums.

11. Defendants argue that this Court's decision would lead to the conclusion that state laws that impose "stiffer licensing requirements for health care providers, sales taxes on prescription drugs, ... or prohibit[ ] assisted suicide," would be considered insurance laws simply because they may raise insurance premiums. (Defs.' Br. at 21.) The Supreme Court,

though, has held that a law which "limit[s] the type of insurance that an insurer may sell to the policyholder" regulates "an integral part of the relationship between the insurer and the policyholder." *Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. 2380. If a rule "effectively creates a mandatory contract term," then it "dictates the terms of the relationship between the insurer and the insured, and consequently, is integral to that relationship." *Cisneros,* 134 F.3d at 946. Here, the law dictates the clauses that a health insurer may insert in its insurance contracts, and thus is integral to their policy relationship, and defendants' examples are inapposite because they relate to health care rather than to the balance between premiums and benefits.

12. Defendants' argument for this prong focuses on whether the appropriate law to consider is the collateral source statute in its entirety, which is not limited to entities within the insurance industry, or is the antisubrogation law within the collateral source statute, which is limited to entities within the insurance industry. This Court has previously detailed its reasons for considering the antisubrogation law separately.

apply retrospectively unless the decision establishes a new rule of law that is a "sudden and generally unanticipated repudiation of a long-standing practice" and (1) the parties and the community justifiably relied on the prior rule, (2) the purpose of the new rule will not be advanced by retroactive application, and (3) retroactive application of the rule may have an adverse effect on the administration of justice. *Reuter v. Borough Council of the Borough of Fort Lee*, 167 N.J. 38, 42, 768 A.2d 769 (2001); *State v. Afanador*, 151 N.J. 41, 58, 697 A.2d 529 (1997); *Coons v. Am. Honda Motor Co.*, 96 N.J. 419, 426, 476 A.2d 763 (1984).

The Court found that the antisubrogation rule, as interpreted by the *Perreira* court, should be applied retrospectively because the *Perreira* court found that the law of New Jersey regarding subrogation has always been reflected by the antisubrogation rule, and not by the contradictory insurance regulation considered in the opinion.[13] Thus, this Court found that the antisubrogation rule was not a sudden de-

---

**13.** The New Jersey Supreme Court issued a lengthy opinion that traced the history of the collateral source rule in New Jersey and detailed its effect on the insurance industry. *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001). The court explained that the common law collateral source rule, cited in decisions as early as 1854, allowed an injured party to recover from his tortfeasor the total amount of his damages, even if he had already recovered health insurance proceeds. *Id.* at 406, 778 A.2d 429. The theory was that a tortfeasor should not enjoy any benefit for his wrong. *Id.* Under the common law, though, the health insurance company did *not* have an equitable right to recover the amounts that it paid and the injured party could recover for his injuries twice—once from his health insurance company and once from the tortfeasor. *Id.* at 406–07, 412, 778 A.2d 429.

In the mid–1980s, states began to statutorily revise the common law collateral source rule to combat rising insurance costs (since both health insurers and liability insurers were paying for the same injuries) and to eliminate double recovery to injured parties. *Id.* at 407, 778 A.2d 429. Some states provided that the tortfeasor could reduce his payment by amounts paid by the injured party's health insurer unless the health insurer had a contractual right to subrogation or reimbursement. *Id.* at 408, 778 A.2d 429. Others provided that juries could consider and deduct moneys expended by health insurance from their tort judgment award. *Id.* Others required that tortfeasors pay the total judgment and gave health insurers the right of subrogation to recover any amounts they paid. *Id.* New Jersey provided still another option; with its enactment of N.J.S.A. 2A:15–97 in 1987, New Jersey made the "legislative determination" that the tortfeasor can reduce his payment by amounts received from collateral sources, including amounts received from the injured party's health insurance. *Id.* at 411, 778 A.2d 429. "By that action, the Legislature eliminated double recovery to plaintiffs, reduced the burden on the tortfeasors' liability carriers and left health insurers in the same position as they were prior to the enactment of N.J.S.A. 2A:15–97." *Id.* In other words, under the common law, the health insurers paid for the medical expenses of their insureds and were not able to recoup the payments via subrogation or reimbursement; likewise, under N.J.S.A. 2A:15–97, the health insurers were in the same position—they must pay the medical expenses and cannot recoup their payments. *Id.* Health insurance companies could not overcome this antisubrogation rule by including a contractual provision in their policies. *Id.* at 415, 778 A.2d 429.

Then, in 1993, the Department of Insurance mistakenly "allowed the inclusion of subrogation and reimbursement provisions in health insurance policies provided through the Small Employer Health Benefits Program and the Individual Health Coverage Program. N.J.A.C. 11:20[and] later, the Commissioner promulgated *regulations that for the first time* permitted such provisions in large group health insurance policies." *See id.;* N.J.A.C. 11:4–42:10.

In *Perreira*, the New Jersey Supreme Court considered this insurance regulation and found that it was inconsistent with the New Jersey collateral source statute, and unenforceable. *Id.* at 416, 778 A.2d 429. The health insurer involved in *Perreira* had relied on the insurance regulation, but the New Jersey Supreme Court reinstated judgments against it which barred the insurer from as-

parture from the long-standing law of New Jersey because the New Jersey Supreme Court had found that the antisubrogation rule was the long-standing law of New Jersey. *See Carducci,* 247 F.Supp.2d at 618.

Defendants have now presented additional arguments to support their argument that *Perreira* should not be applied retrospectively, arguing first that it is a sudden departure from existing law, and second that the other three requirements for prospective application have been met. While the Court's decision is still supportable in spite of the new arguments, the Court recognizes that they do raise substantial questions that should be determined by an interlocutory appeal at this time.

Defendants first argue that the *Perreira* decision should be considered a sudden departure from existing law because this Court "overlooked a well-settled element of New Jersey's doctrine on the retroactive application of judicial decisions" which

allows for prospective application when "a court renders a first-instance or clarifying decision in a murky or uncertain area of the law, or when a member of the public could reasonably have relied on a different conception of the state of the law." *SASCO v. Zudkewich,* 166 N.J. 579, 594, 767 A.2d 469 (2001) (quoting *Montells v. Haynes,* 133 N.J. 282, 298, 627 A.2d 654 (1993)); *see also Reuter v. Borough Council of Borough of Fort Lee,* 167 N.J. 38, 768 A.2d 769 (2001).[14]

There are substantial questions about the retrospective application of the *Perreira* decision because it, like *SASCO,* overturned a regulation that defendants relied on and considered common practice in their industry. *See* N.J.A.C. 11:4–42.10. In *SASCO,* though, unlike here, the New Jersey Supreme Court applied its decision in a "purely prospective" manner so that it would not affect the parties before it who had relied on industry practice. *SASCO,* 166 N.J. at 594, 767 A.2d 469. In *Perreira,* the Supreme Court of New Jersey

---

serting its subrogation liens. *Id.* at 404, 418, 778 A.2d 429.

Based on this history, and on the fact that the *Perreira* court applied its own decision retrospectively, this Court decided that the *Perreira* rule was not a "sudden departure" from the long-standing law of New Jersey.

**14.** In *Reuter,* the New Jersey Supreme Court applied their new interpretation of a statute prospectively because many had relied on a different interpretation. The statute in *Reuter* stated, in part, that "[t]he governing body of any municipality, by ordinance, may create and establish . . . a police force." 167 N.J. at 40, 768 A.2d 769 (quoting N.J.S.A. 40A:14–118). The municipality had then enacted an ordinance providing that police force positions could be established by resolution. *Reuter,* 167 N.J. at 40, 768 A.2d 769. When competitors contested the appointment of a deputy chief because his position was created by resolution, and not by ordinance, the New Jersey Supreme Court found that the statute required that police positions be created by ordinance. *Id.* The court further found,

though, that there had been a "long-term interpretation of the law to the effect that an ordinance was not required to create new police positions" by other municipalities in New Jersey and by the Attorney General of New Jersey, and that "there has been reliance on the notion that police positions can be established by resolution," provided the resolution process was established by ordinance. *Id.* at 42–43, 768 A.2d 769. For that reason, the New Jersey Supreme Court allowed the municipality's deputy chief to remain in office, but held that "from today forward no appointment may be made to any police department position not created" by ordinance. *Id.* at 43, 768 A.2d 769.

Defendants do not explain, though, why *Reuter* should apply to this case when the *Reuter* court explicitly limited its decision to "today forward" and the *Perreira* court applied its decision to the parties before it. The court was clearly aware of the *Reuter* decision, which was issued on March 29, 2001, when it issued its *Perreira* decision on June 26, 2001.

recognized that the defendant insurers had relied on the erroneous insurance regulation and still applied its decision retrospectively to the insurers before it.[15]

Defendants argue, though, that this Court should not consider the fact that the *Perreira* court applied its decision retrospectively to the parties before it because New Jersey courts can follow one of four options when determining questions of retrospectivity, namely:

(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced;

(2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation;

(3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and

(4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted.

*Coons*, 96 N.J. at 425, 476 A.2d 763. The approach taken depends largely on "the court's view of what is just and consonant with public policy in the particular situation presented." *Id.* (quoting *State v. Nash*, 64 N.J. 464, 469, 317 A.2d 689 (1974)). Here, therefore, the New Jersey Supreme Court may have intended that option (2) be followed, in other words, that the *Perreira* decision be applied retrospectively to the *Perreira* parties, but not be applied to other pending cases.

Although this Court continues to believe that the *Perreira* court spoke definitively to apply its antisubrogation decision retrospectively, the Court finds that defendants have shown that its decision regarding the long-standing law of New Jersey and whether *Perreira* was a departure from that law, are close issues that should be clarified at this point.

Defendants also argue that there are substantial questions about this Court's findings on the other three factors required to justify prospective application.[16] For the first prong, they argue that they justifiably relied on the prior law of New Jersey when they relied on the insurance commissioner's regulation. This raises a question because the insurance companies had reason to believe that the insurance regulation was appropriate since administrative regulations are generally accorded a high degree of deference, *see Perreira*, 169 N.J. at 415, 778 A.2d 429.[17] For the

---

**15.** The court specifically recognized that the insurers involved in *Perreira* had included reimbursement provisions in their contract in reliance on industry practice and the New Jersey administrative regulation permitting reimbursement. *Perreira*, 169 N.J. at 415, 778 A.2d 429. Even so, the court found that the health insurers could not recover pursuant to the reimbursement provisions because New Jersey statutory law had established an antisubrogation scheme that "the Commissioner was not free to alter" with a regulation. *Id.* at 416, 778 A.2d 429.

**16.** As explained *supra*, prospective application is only appropriate if the decision is a sudden departure from long-standing law *and* (1) the parties and the community justifiably relied on the prior state law, (2) the purpose of the new law will not be advanced by retroactive application, and (3) the retroactive application of the new law may have an adverse effect on the administration of justice. *See Reuter*, 167 N.J. at 42, 768 A.2d 769; *Coons*, 96 N.J. at 426, 476 A.2d 763.

**17.** This Court based its holding that they did not rely on the prior law of the state because the *Perreira* court found that the regulation did not reflect the prior law of the state. The prior law, indeed, was the 1987 enactment of N.J.S.A. 2A:15–97, and not the subsequent insurance regulations in N.J.A.C. 11:4–42:10, *supra*. Given the antisubrogation provisions of

second prong, defendants argue that the purpose of the *Perreira* rule will not be advanced by retroactive application because requiring the health insurers to pay plaintiffs for amounts taken will not "shift the burden of health costs away from liability insurers and onto health insurers" because the money is being returned to the plaintiffs and not to the liability insurers.[18] This argument, though valid, does assume that the liability insurers paid plaintiffs for the medical expenses that plaintiffs received health insurance coverage for, and the plaintiffs here have asserted that they were injured because they were not compensated for their injuries by either the liability insurer or the health insurer which, though it originally compensated them, took the compensation back via the reimbursement or subrogation lien.[19] For the third prong, defendants argue that there are substantial questions with the Court's decision because retroactive application of *Perreira* would have an adverse effect on the administration of justice because it will raise a "judicial mare's nest" of factual issues in every case about whether *Perreira* applies or whether the voluntary payment doctrine removes a prior settlement agreement from its reach.[20] It is true that the administration of justice may become more complicated if *Perreira* is applied retrospectively, but it is also clear that justice may require retrospective application to ensure that plaintiffs' medical expenses are compensated.

the statute, any reliance on the contrary regulation is weak.

18. Defendants did not present this argument in support of their motion to dismiss. Instead, there they argued that the purpose of the *Perreira* rule would be hampered by retroactive application because it would allow insureds to double recover by allowing them to retain amounts recovered from liability insurers while receiving amounts from health insurers. The Court found that this argument assumed that the insureds recovered from the liability insurance companies for their medical expenses in the first place, a fact that plaintiffs denied and that was contradicted by the language of the collateral source statute that "any benefits" for injuries received "from any other source ... shall be deducted" from the tortfeasor's (or liability insurer's) payment. *See* N.J.S.A. 2A:15–97. Therefore, if the liability insurers did in fact deduct amounts that the plaintiffs received from the health insurers, and the health insurers took amounts they paid, retroactive application was needed to ensure that the plaintiffs were fully compensated.

19. Defendants admit that this Court found that there are questions of fact concerning whether the plaintiffs recovered the cost of the medical expenses from the liability insurers. They argue, that even if the plaintiffs did not receive from the liability insurers, it would "not change the equation" because then, the liability insurers must have thought that the insurance regulation permitting subrogation and reimbursement was not valid, because they otherwise would have calculated their settlement offers based on it. (Defs.' Br. at 29 n. 3.) Then, if they thought that the regulation was invalid, it "would logically have had no adverse impact on liability insurance premiums [and] returning the money now to plaintiffs would do nothing to advance the statutory purpose." (*Id.*) This argument again ignores the effect of the insurance regulation on plaintiffs. Even if liability insurance premiums were not affected by the regulation, the plaintiffs, if not compensated by the liability insurers for their medical expenses but forced to reimburse their health insurers for the medical expenses, would bear the cost of their own medical expenses.

20. In their motion to dismiss papers, defendants argued that retroactive application would have an adverse effect on justice because it would allow injured parties to undo settlement agreements entered into with their health insurance companies to satisfy the subrogation liens the health insurance companies had asserted on their tort judgments. The Court discounted this argument, explaining that prior settlement agreements could still be enforced under New Jersey law if the elements of the voluntary payment doctrine were satisfied.

While the Court has considered defendants' arguments and has pointed out their weaknesses, the Court acknowledges that the issues here are complex and subject to debate, especially because of defendants' reliance on the permissive insurance regulation. "Questions of retroactivity for years have been considered 'among the most difficult' problems that engage the attention of the courts, both state and federal." *Coons,* 96 N.J. at 424–25, 476 A.2d 763 (quoting *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940)). Thus, this Court finds that the question of retroactivity here is a close issue that is subject to debate and should be certified for an appeal at this time in the litigation.

### B. *Plaintiffs' Motion to Certify the May 28, 2002 Order Denying Their Motion to Remand*

■ Plaintiffs have not opposed defendants' motion to certify this Court's March 4, 2003 order; instead, they seek certification at the same time of this Court's May 28, 2002 decision which denied their motion to remand based on the Court's finding that plaintiffs' claims, although expressed under state law, are in fact for "benefits due" under the terms of their ERISA plan, and thus must be considered in federal court. *See Carducci v. Aetna U.S. Healthcare,* 204 F.Supp.2d 796 (D.N.J.2002); 29 U.S.C. § 1132(a)(1)(B).[21]

Plaintiffs previously sought certification of the May 28, 2002 Opinion and Order, which was denied without prejudice in this Court's July 24, 2002 Opinion and Order. *See Carducci v. Aetna U.S. Healthcare,* 2002 WL 31262100 (D.N.J. Jul. 24, 2002). There, the Court found that the issue decided in the motion was a controlling question of law, but that plaintiffs failed to show that there was a substantial ground for disagreement about the issue or that certification of the issue would advance the ultimate termination of the litigation.[22] Plaintiffs assert that the calculus has changed at this stage of the litigation and that this issue should now be certified for interlocutory appeal. This Court agrees and will certify the issue.

Again the issue here revolves around whether there are substantial grounds for disagreement on this issue. It is again clear that the issue presented for review is a controlling question of law because if, contrary to this Court's decision, plaintiffs' claims are not claims for benefits due under their ERISA plans within the meaning of ERISA section 502(a)(1)(B), then this Court lacks federal jurisdiction over the action. Likewise, it is clear that certifying this issue now, in conjunction with the certification of defendants' appeal, would materially advance the ultimate termination of the litigation by providing the Third Circuit with all pertinent, and disputed, issues at once.

The principal issue, thus, is whether there are substantial grounds for debate about this Court's "benefits due" decision.

---

**21.** ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides, in relevant part:
A civil action may be brought—
(1) by a participant or beneficiary—...
  (B) *to recover benefits due to him under the terms of his plan,* to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

**22.** As noted *supra,* for exceptional circumstances to justify certification, the moving party must show (1) that the order at issue involves a controlling issue of law, which if erroneously decided, would result in reversible error on final appeal, (2) that there is substantial ground for difference of opinion about the resolution of the issue, and (3) that an immediate appeal will materially advance the ultimate termination of litigation. *See Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754–55 (3d Cir.1974).

Plaintiffs argue that "the situation now is very different than at the time of their original § 1292(b) motion" because subsequent decisions have shown that "substantial ground for difference does indeed exist with regard to this important jurisdictional issue."[23] (Pls.' Br. at 4 (citing *Arana v. Ochsner Health Plan, Inc.*, 302 F.3d 462 (5th Cir.2002), rehearing *en banc* granted, 319 F.3d 205 (2003)); *McKandes v. Blue Cross and Blue Shield Assoc.*, 243 F.Supp.2d 380 (D.Md.2003); *Popoola v. MD–Individual Practice Assoc.*, 244 F.Supp.2d 577 (D.Md.2003)).

The Court finds that these subsequent cases can be distinguished from the present case,[24] but that they still show that the issue here is complex, controversial, pivot-

al to this Court's subject matter jurisdiction, and subject to debate. Therefore, the Court will also certify this issue for interlocutory appeal.

## III. CONCLUSION

This Court has considered the motions of the parties seeking the certification of three issues for interlocutory appeal to the United States Court of Appeals for the Third Circuit and has found, for the foregoing reasons, that the three issues, namely

(1) whether the antisubrogation rule contained in N.J.S.A. 2A:15–97, as interpreted by the New Jersey Supreme Court in *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001),

**23.** In the Court's prior section 1292(b) decision, it found that plaintiffs had shown personal disagreement with the Court's decision, but not a substantial ground for difference of opinion about it. Plaintiffs had not pointed to any precedent which indicated that there was a split of authority on the issue. To the contrary, the Court found that its decision aligned with the decisions of other courts which had considered the same issue. *See Carducci*, 2002 WL 31262100 at *2 (citing *Franks v. Prudential Health Care Plan, Inc.*, 164 F.Supp.2d 865, 873 (W.D.Tex.2001); *Riemer v. Columbia Medical Plan, Inc.*, 1997 WL 33126252, at * 1–2 (D.Md. Mar.28, 1997); *Kaszula v. Parker*, 1997 WL 106267 (N.D.Ill. Feb.13, 1997)).

**24.** In *Arana*, the health insurance company had not filed a formal claim for subrogation or reimbursement, as defendants did here, so the plaintiff's suit was solely for a declaration that the company was not entitled to do so. 302 F.3d at 470. The Fifth Circuit, in a decision that the court has since agreed to rehear, found that the claim was not one for benefits due because the plaintiff did not seek additional benefits from the health insurer. *Id.* The court specifically distinguished this Court's decision in *Carducci*, stating that the plaintiff's "case therefore does not present a situation ... in which a participant or beneficiary seeks to recover benefits she claims were wrongly reimbursed to an ERISA plan out of funds recovered by a third party, *e.g.*

*Carducci v. Aetna U.S. Healthcare*, 204 F.Supp.2d 796, 803 (D.N.J.2002)." *Id.* at 470 n. 9.

In *McKandes*, the plaintiff had paid amounts to her health insurer to settle a subrogation lien, but then filed her complaint seeking only class relief for persons who had "been notified by [the defendant health insurer] that it had a lien against or a subrogation interest in any monies that the members or insureds had received or would receive from a third party." *McKandes*, 243 F.Supp.2d at 384. The court, following *Arana*, found that the action was not one to seek "benefits due" because plaintiff also sought only declaratory relief.

In *Popoola*, the plaintiff paid a settlement to her health insurer to satisfy a subrogation lien and then filed suit alleging that the health insurer was "unjustly enriched by its practice of claiming and receiving asserted liens against and subrogation interests in monies that its members and insureds received from third parties." 244 F.Supp.2d at 579. The defendants asserted that the action was to "enforce rights" under the benefit plan, instead of, as here, one seeking "benefits due." *Id.* at 580. Thus, the court did not consider whether the claim was a "claim for benefits." Instead, the court found that a case challenging a provision in the health plan was not an action to enforce a provision in a health plan. *Id.* at 581.

applies to defendant health insurers because it is not conflict preempted under ERISA section 514(a) because it is "saved" as a state law that regulates insurance;

(2) whether *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), applies retroactively to plaintiffs' pre-*Perreira* health insurance plans; and

(3) whether plaintiffs' unjust enrichment claims for monies taken pursuant to subrogation and reimbursement provisions in their ERISA health plans are claims for "benefits due" within the meaning of ERISA section 502(a);

are controlling issues of law, around which there are substantial grounds for disagreement which should be resolved at this stage in the litigation. Thus, this Court will certify these three issues for appeal and will stay further action in these three consolidated cases pending the resolution of this matter before the United States Court of Appeals for the Third Circuit.

The accompanying Order is entered.

### ORDER CERTIFYING QUESTIONS FOR INTERLOCUTORY APPEAL

This matter having come before the Court on the motion of defendants for this Court to certify for interlocutory appeal two issues determined in this Court's March 4, 2003 decision denying defendants' motion to dismiss, [Docket Item 27–1], and the motion of plaintiffs for this Court to certify for interlocutory appeal one issue determined in this Court's May 28, 2002 decision denying plaintiffs' motion to remand, [Docket Item 29–1], and the Court having considered the submissions of the parties and their oral arguments on April 24, 2003, and having found, for the reasons expressed in an Opinion of today's date, that the issues should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b);

IT IS this ___ day of October, 2003 hereby:

**ORDERED** that defendants' motion for this Court to certify for interlocutory appeal two issues determined in this Court's March 4, 2003 decision denying defendants' motion to dismiss, [Docket Item 27–1], be, and hereby is, **GRANTED**, and the following two issues are certified for interlocutory appeal:

(1) whether the antisubrogation rule contained in N.J.S.A. 2A:15–97, as interpreted by the New Jersey Supreme Court in *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), applies to defendant health insurers because it is not conflict preempted under ERISA section 514(a) because it is "saved" as a state law that regulates insurance; and

(2) whether *Perreira v. Rediger*, 169 N.J. 399, 778 A.2d 429 (2001), applies retroactively to plaintiffs' pre-*Perreira* health insurance plans; and

**IT IS FURTHER ORDERED** that plaintiffs' motion for this Court to certify for interlocutory appeal one issue determined in this Court's May 28, 2002 decision denying plaintiffs' motion to remand, [Docket Item 29–1], be, and hereby is, **GRANTED** and the following issue is certified for interlocutory appeal:

whether plaintiffs' unjust enrichment claims for monies taken pursuant to subrogation and reimbursement provisions in their ERISA health plans are claims for "benefits due" within the meaning of ERISA section 502(a); and

**IT IS FURTHER ORDERED** that proceedings in *Levine v. United Healthcare Corp.*, Civil No. 01–4964(JBS); *Bogurski v. Horizon Blue Cross Blue Shield of New Jersey*, Civil No. 01–5339(JBS); and *Ed-*

*monson v. Horizon Blue Cross Blue Shield of New Jersey,* Civil No. 01–5812(JBS), be, and hereby are, ***STAYED*** pending disposition of these issues before the United States Court of Appeals for the Third Circuit.